UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLORADO
Honorable Howard R. Tallman

| | |
|---|---|
| In re: | ) |
| | ) |
| CARMEN AVITIA, | ) Case No. 11-35964 HRT |
| | ) |
| Debtor. | ) Chapter 7 |
| | ) |
| | ) |
| RICHARD A. WIELAND, United States Trustee Region 19, | ) ) |
| | ) |
| Movant, | ) |
| | ) |
| v. | ) |
| | ) |
| EMMANUEL M. ASSAF, | ) |
| | ) |
| Respondent. | ) |

## ORDER ON ORDER TO SHOW CAUSE

This case comes before the Court on the Court's *Order to Emmanuel Assaf to Show Cause Why Fines, Penalties, Injunctive and Other Relief Should Not Be Ordered Against Him under 11 U.S.C. §§ 105, 110 and 526* (docket #27).

### I.  FINDINGS OF FACT

1. Debtor Carmen Avitia filed her bankruptcy case, *pro se*, on November 3, 2011.

2. Debtor's voluntary petition discloses that she was assisted by a non-attorney bankruptcy petition preparer identified as Emmanuel M. Assaf.

3. Debtor became aware of Assaf after seeing a Spanish language television advertisement for Assaf's bankruptcy services.  Debtor telephoned his office and subsequently met with Assaf on or about October 24, 2011.

4. Debtor testified that she paid Assaf $300.00 during the October 24, 2011, meeting.

5. Debtor met with Assaf again on October 31, 2011, and she next met with him on the day she filed bankruptcy, November 3, 2011. At that time, she signed the bankruptcy paperwork and documents presented to her by Assaf.

ORDER ON ORDER TO SHOW CAUSE
Case No. 11-35964 HRT

6. Debtor testified that on either October 31 or November 3, she had a telephone conversation with an unknown person which lasted approximately 5 to 15 minutes. Debtor was told that phone call was to be her credit counseling. She testified that "I thought it was a class, but it wasn't anything like a class."

7. The evidence from the representative of Abacus Credit Counseling was that the credit counseling certificate it issued to the Debtor was issued after completion of a course taken via the internet. The certificate (docket #1) reflects that the course was completed at 8:19 a.m. Pacific Time (9:19 a.m. Mountain Time) on November 3, 2012. Debtor testified that she took no credit counseling course over the internet and that she did not go to Assaf's office on November 3 until 10:00 a.m.

8. Debtor testified that she paid Assaf $200.00 in cash on November 3 (for a total of $500.00 paid). Debtor then traveled with a person from Assaf's office and another debtor to the Court to file her bankruptcy.

9. Assaf (either alone or with the assistance of his staff) prepared the following documents which Debtor signed and then filed with the Clerk of the Bankruptcy Court's office on November 3, 2011:
    a. Debtor's bankruptcy Petition, wherein Debtor commenced a case under chapter 7. (docket #1).
    b. Debtor's Schedules A through J. (docket #1).
    c. Debtor's Statement of Financial Affairs. (docket #1).
    d. Debtor's Form B22A. (docket #1).
    e. Debtor's Form B1D (Statement of Compliance With Credit Counseling Requirement). (docket #1). This document reflects that Debtor completed a credit counseling course from Abacus Credit Counseling.
    f. Debtor's form B21 Statement of Social-Security Number(s).
    g. Debtor's Statement of Intent. (docket #3).
    h. Debtor's Application For Waiver of the Chapter 7 Filing Fee. (docket #6).
    i. Debtor's Form 23 Certification of Completion of Postpetition Instructional Course Concerning Personal Financial Management (docket #11).

10. Assaf's signature as bankruptcy petition preparer does not appear on:
    a. Debtor's Schedules A through J. (docket #1).
    b. Debtor's Form B22A. (docket #1).
    c. Debtor's Form B1D (Statement of Compliance With Credit Counseling Requirement). (docket #1).
    d. Debtor's form B21 Statement of Social-Security Number(s).
    e. Debtor's Statement of Intent. (docket #3).

ORDER ON ORDER TO SHOW CAUSE
Case No. 11-35964 HRT

      f.      Debtor's Form 23 Certification of Completion of Postpetition Instructional Course Concerning Personal Financial Management (docket #11).

11. Assaf signed the Form B19 – Declaration And Signature of Non-Attorney Bankruptcy Petition Preparer filed in this case wherein Assaf declared that he prepared, "Debtor's Voluntary Petition, Schedules A through J, Summary of Schedules, Statements of Financial Affairs, Statements of Intentions, Means Test Calculation & Creditor Matrix." This was filed also on November 3, 2011. (docket #4).

12. Assaf signed the Form 280 – Disclosure of Compensation of Bankruptcy Petition Preparer. This document was filed also on November 3, 2011. (docket #5). This Disclosure shows that Assaf received only $200.00 in compensation but the evidence shows that Debtor paid Assaf $500.00.

13. Debtor did not prepare or bring any draft bankruptcy documents to Assaf for typing. With respect to her Schedule C, Debtor states that she does not know what an exemption is or what the citations to the State of Colorado statutes mean that were typed on Schedule C. Debtor testified that Assaf told her that a chapter 7 bankruptcy was appropriate to her circumstances. She also states that she did not know what the term "avoid lien" meant that was typed on her filed Statement of Intent.

14. Ms. Rocio Reza-Ortega, a former employee of Assaf's provided testimony regarding Assaf's business practices. As Assaf's employee, she was trained by Assaf on how to prepare a substantial portion of a typical debtor's bankruptcy documents, and was personally familiar with Assaf's business model and procedures.

15. Although she left Assaf's employ approximately a week before Debtor first met with Assaf, Ms. Reza-Ortega states, generally:
   a. Clients would call to make an appointment and would come in and see Assaf first. Individual clients were generally charged $200.00 for the typing service and $100.00 for a "workbook." A the client who took credit counseling through Assaf's office was charged $100.00 for each class. In total, a single debtor would be charged $500.00.
   b. Generally, when a client came to the office to file bankruptcy, a credit report would be run and all clients would be given a workbook to fill out. Part of the workbook has a section about exemptions with citations to the Colorado exemption statutes. Other parts had information for the client to fill out about income, expenses, creditor information, etc.

ORDER ON ORDER TO SHOW CAUSE
Case No. 11-35964 HRT

    c.    Assaf trained Ms. Reza-Ortega on his procedures to prepare the official bankruptcy forms, primarily Schedules A, B, C, D, E, I and J, as well as the debtors' Statement of Intent and Means Test Form.

    d.    Her responsibilities as an employee of Assaf included meeting with debtors, typing Schedules A, B, C, D, E, I and J, as well as the debtors' Statement of Intent and Means Test Form.

    e.    Usually, Assaf's other employees would prepare the other schedules and forms.

    f.    As for preparing Schedules A, B, C, D, I, and J, these Schedules were generally typed out according to the information provided by the client in the workbook. Schedule G and Schedule H were never completed with substantive information. For Schedule G, Assaf's staff were trained to check off the box that said "Check this box if debtor has no executory contracts or unexpired leases." For Schedule H, Assaf's staff was trained to check off the box that said "Check this box if debtor has no codebtors." Assaf's workbook did not elicit information from customers concerning executory contracts or codebtors.

    g.    Generally, Schedule C was already pre-formatted with common property descriptions and Colorado exemption statutes. Based on the client's property listed in the workbook, Assaf's staff was trained to add or white out items on the pre-formatted Schedule C.

    h.    Assaf trained Ms. Reza-Ortega to put all car loans and mortgage loans on Schedule D. All other debts were usually typed on Schedule F (which was generally typed out according to the information in the client's credit report and any additional information provided by clients).

    i.    The Statement of Intent form had "avoid lien" pre-typed on it. If clients wanted to keep their vehicle and owed an auto lender for the vehicle, Assaf trained her to use this form, representing that the client would "avoid lien." If the client wanted to return the vehicle to the auto lender, she would change the form and mark the surrender box.

    j.    The Means Test Form was usually prepared by estimating the debtors' current monthly income based on two or three pay stubs.

16. Assaf paid Abacus $25.00 for the Debtor's credit counseling course and paid Sage Personal Finance $35.00 for the Debtor's personal financial management course. The evidence persuades the Court that the Debtor personally participated in neither course.

17. Assaf received a total of $500.00 within 12 months preceding the date of Debtor's bankruptcy filing, i.e., within 12 months before November 3, 2011. UST Exhs. 10 and 10.a., Interrogatory No. 1 (Assaf response to UST interrogatories).

18. Assaf did not disclose the full $500.00 amount he received from Debtor in the Form B280 – Disclosure of Compensation of Bankruptcy Petition Preparer which he signed and which was filed in this case. (docket #5).

19. These records also reflect that the counseling session was conducted via the internet. The details on the time and method of delivery for the counseling also evidence that Debtor was not the person who took the course.

20. Abacus Credit Counseling is the UST approved credit counseling service that issued the counseling certificate filed with the Debtor's case.

21. Laura Ahart, the CEO of Abacus Credit Counseling and custodian of Abacus' business records, testified regarding the development of the credit counseling course. She testified that the pre-petition credit counseling course was designed by Abacus to take approximately 60 minutes to meet the requirements of the United States Trustee Program. UST Exh. 12, pp. 69-71.

22. Ms. Ahart testified, among other things, that Abacus' business records show the amount of time it took each client or customer to complete the pre-bankruptcy credit counseling course; the types of data which the client inputs as part of the counseling course; the information which is communicated by Abacus to the client throughout the course; the cost of the course; how the client pays for the counseling course; and how a certificate of completion is issued and to whom. UST Exh. 12.

23. Abacus' business records regarding the counseling session for Certificate Number 12459- CO-CC-016504781 (the certificate given to the Debtor by Assaf) show that the session was completed in only 4 minutes and 21 seconds, and that the counseling was provided via the internet.

24. Abacus' records show that $25.00 was paid for the course and that it was Assaf who paid the $25.00. UST Exh. 14, p. 2735.

25. The Court concludes that the Debtor did not take the course for which Certificate Number 12459-CO-CC-016504781 was issued. Rather, Assaf and/or his staff completed the credit counseling course to fraudulently procure Certificate Number 12459- CO-CC-016504781 for the Debtor without the Debtor's knowledge or participation in the fraud.

26. Nicole Zollars, paralegal with the United States Trustee Program testified that she ran a search on PACER to locate bankruptcy cases filed in the District of Colorado in which debtors filed a Form B19 -- Declaration And Signature of

ORDER ON ORDER TO SHOW CAUSE
Case No. 11-35964 HRT

27. Non-Attorney Bankruptcy Petition Preparer signed by Assaf declaring that he was a petition preparer for the debtors in those cases. Ms. Zollars also attended Ms. Ahart's deposition to better understand the information contained in the produced Abacus business records.

27. Based on this information and documents, Ms. Zollars located 352 debtors identifying Assaf as a bankruptcy petition preparer in cases filed in the District of Colorado between March 26, 2010 (the first case Ms. Zollars was able to locate where an Assaf debtor used Abacus) and November 3, 2011 (the date of Debtor's bankruptcy filing).

28. Ms. Zollars examined the court records to identify the pre-petition credit counseling agency that provided the pre-petition credit counseling for those 352 debtors. Of the 352 debtors, Ms. Zollars found that Abacus was the credit counseling agency identified in the Form B1D (Statement of Compliance With Credit Counseling Requirement) filed by the debtors in 320 cases. UST Exh. 13a.

29. Ms. Zollars was able to locate each client data record maintained by Abacus for each of the 320 courses allegedly taken by Assaf's customers.

30. Of the 320 courses, 283 were completed by someone in less than 5 minutes (88%) and another 25 were completed within 10 minutes (96% of the 308 courses). Of the remaining 12 courses, 9 were completed in less than 20 minutes. Only once did the completion time exceed 60 minutes. UST Exh. 13a.

31. The course was completed in less than 1 minute 122 times (and if taking into account joint debtors who took the course together, 122 courses in 105 cases). UST Exh. 13a.

32. In addition to the time records she compiled, Ms. Zollars also summarized the data inputs in these 320 courses taken from Abacus. Of note, of these 320 courses:
   a.   no health related expenses were input in over 99% of the courses taken; UST Exh. 13a. pp. 11-20;
   b.   no car payments or other auto related expenses were input in over 90% of the courses taken. UST Exh. 13a. pp. 21-30;
   c.   no shopping related expenses (clothing, gifts, other) were input in over 99% of the courses taken. UST Exh. 13a. pp. 31-40;
   d.   no entertainment related expenses were input in over 98% of the courses taken. UST Exh. 13a. pp. 31-40;
   e.   no child care or child related expenses were input in over 99% of the courses taken. UST Exh. 13a. pp. 41-50;

Page 6 of 20

  f. no alcohol expenses, no grooming expenses, no cigarette expenses, no student loan payments, no tax payments, no medical bills and no credit card payments were input in over 99% of the courses taken. UST Exh. 13a. pp. 51-60.

33. The Court records reflect that on November 10, 2011, a Form B23 Debtor's Certification Of Completion of Postpetition Instructional Course Concerning Personal Financial Management was filed. (docket #11). UST Exhibit 6.

34. The Form B23, signed by Debtor, reflects that a financial management course was completed on November 8, 2011, five (5) days after Debtor filed bankruptcy.

35. A Certificate of Completion was issued through Sage Personal Finance on November 8, 2011, at 12:38 Pacific Time (1:38 Mountain Time), and reflects that the course was completed by Debtor. The Certificate indicates that the course was provided via the internet. All information on the Form B23 is typed except for Debtor's signature. (docket #11). UST Exhibit 6.

36. Debtor testified that she did not take any counseling class at Assaf's office at any time after she filed her bankruptcy case and that she did not take a debtor education class on November 8, 2011.

37. The Court concludes that Assaf or a staff member from his office working at his direction, in this case and routinely in other of his cases, commits a fraud on the Court and on his customers by fraudulently procuring credit counseling and debtor education certificates in the names of his customers and without the participation of customers in the credit counseling and debtor education courses. He also defrauds his customers by charging them for credit counseling/debtor education courses when he is not an approved provider of those educational services.

38. The evidence shows that, in the instant case, Assaf attempted to cover up his fraud by arranging a brief telephone conversation between the Debtor and an unidentified third person after telling the Debtor that she would be taking a credit counseling course with the goal of making the Debtor believe she had taken the course when she had not personally participated in the course.

39. The Court concludes that the Debtor did not knowingly participate in the filing of fraudulent documents with the Court.

40. After discovering that Assaf was not an attorney, Debtor retained qualified bankruptcy counsel, Jane Stobbs, who entered her appearance in the case on

December 1, 2011. On December 6, 2011, with the assistance of counsel, Debtor filed amended Schedules, an amended Statement of Financial Affairs, an Amended Statement of Intent and an Amended Voluntary Petition.

41. The Debtor completed a debtor education course on December 30, 2011. The counseling was provided by Community Credit Counseling Services. On January 4, 2012, Debtor filed a Certificate of Debtor Education, Certificate No. 00121-CO-DE-016966754 issued by Community Credit Counseling. (docket #31). UST Exhibit 7.

42. On January 29, 2008, the U.S Bankruptcy Court for the Central District of California entered order imposing fines, penalties and damages totaling $6,201.00 against Assaf for violating § 110(d), (f), (g) and (h). (*See In re Espinoza*, Case No. LA 07-18881 (Bankr. C.D. Cal. 2008). UST Exhibit 15a

43. The California bankruptcy court found, inter alia, that Assaf:
    a. failed to file, with the petition, a disclosure of the fees received in the prior 12 months;
    b. "intentionally misrepresented" the amount of fees he received or was owed on the Disclosure of Compensation form that was subsequently filed;
    c. provided legal advice and engaged in the unauthorized practice of law; and
    d. engaged in acts which were, "fraudulent, unfair or deceptive." UST Exhibit 15b., p. 225.

44. On April 3, 2008, the U.S. Trustee for that Region filed a motion seeking further sanctions and injunctive relief against Assaf because he had failed to pay the fines imposed in the *Espinoza* case, and had failed to pay fines ordered against him in six (6) other bankruptcy cases. UST Exhibit 15c., pp. 212-13; UST Exhibit 15d.

45. On May 7, 2008, the Central District of California bankruptcy court then enjoined Assaf from preparing or assisting in preparing any bankruptcy documents for filing in the Central District of California. UST Exhibit 15e.

46. On September 23, 2009, the Preliminary Disciplinary Judge ("PDJ") appointed by the Colorado Supreme Court to determine facts involving Assaf determined, among other things, that:
    a. Assaf had breached an April 24, 2006, agreement with the Colorado Unauthorized Practice of Law Committee in which Assaf had agreed to refrain from, inter alia, using business cards suggesting he could provide

ORDER ON ORDER TO SHOW CAUSE
Case No. 11-35964 HRT

        legal advice, and from providing legal advice and preparing legal documents.
- b. Assaf had breached the agreement specifically by offering individuals legal guidance in the course of preparing bankruptcy petitions.
- c. That in "offering legal advice prohibited by the bankruptcy petition preparer statute under 11 U.S.C.A. §110, [Assaf] engaged in the unauthorized practice of law." UST Exhibit 16, p. 4.

47. Based on these findings, the Colorado Supreme Court enjoined Assaf on September 29, 2009, from engaging in any further acts of unauthorized practice of law. UST Exhibit 16a.

48. Assaf first met with Debtor on October 24, 2011. Chronologically, this meeting and Assaf's subsequent preparation of Debtor's official bankruptcy forms occurred after being fined, sanctioned and enjoined from being a petition preparer by the Central District of California bankruptcy court for a variety of § 110 violations, after being enjoined by the Colorado Supreme Court for providing legal advice as a petition preparer, after being fined by Judge Brooks for unfair and deceptive practices under § 110, and after being served with UST's Complaint against him in Colorado, alleging a variety of § 110 violations in 241 cases.

49. In the case of *Wieland v. Assaf (In re Briones-Coroy)*, 481 B.R. 685 (Bankr. D. Colo. 2012), Judge Brooks conducted a hearing with respect to Assaf's operations and practices in 241 separate cases filed in this district. In that case, Judge Brooks entered an order that generally:
- a. required Assaf to disgorge all fees paid to him by the debtors in those cases;
- b. required Assaf to refund filing fees which he collected directly from certain of his customers;
- c. enjoined Assaf from operating as a petition preparer or debt relief agency for a period of ten years in any district in the United States;
- d. fined Assaf $480,000.00; and
- e. assessed against Assaf the legal fees incurred by the UST in prosecuting that action.

## II. GOVERNING STATUTE

     Title 11, U.S.C. § 110 governs the activities of non-attorneys who prepare bankruptcy petitions and associated statements and schedules for filing in the bankruptcy courts. As the statute is voluminous, the Court has set it out in its entirety in the Appendix beginning on page 15.

ORDER ON ORDER TO SHOW CAUSE
Case No. 11-35964 HRT

### III. CONCLUSIONS OF LAW

1. Assaf is a bankruptcy petition preparer.[1] The evidence establishes that he is in the business of preparing documents to be filed in bankruptcy courts in connection with bankruptcy cases under Title 11, United States Code.[2]

2. Assaf has engaged in conduct that violates 11 U.S.C. § 110(e)(2).
   a. The evidence established that Assaf has given legal advice in connection with his activities as a bankruptcy petition preparer. Examples of legal advice include:
      i. He advised the Debtor on her ability to keep a motor vehicle and her ability to surrender another vehicle.

---

[1] The actions of Assaf's employees are attributable to him. The evidence establishes that they carried out their activities at his sole direction. Throughout this Order, where the Court makes reference to the activities of Assaf, the evidence shows that the particular activity referred to may have been carried out by Assaf personally or it may have been carried out by a member of his staff acting at his direction.

[2] Cases of this type highlight a paradox in the treatment of petition preparers under the Bankruptcy Code. The Code recognizes and regulates the activities of petition preparers. Given the potential pitfalls for poorly advised debtors seeking relief under the Bankruptcy Code, the prohibition against giving legal advice is not only sensible but necessary. Thus, 11 U.S.C. § 110 restricts the activities of a petition preparer to those of a typist. At the same time, it is difficult if not impossible to prepare a set of bankruptcy statements and schedules without giving legal advice either explicitly or implicitly. Claiming property as exempt is probably the most obvious example. The debtor who is most likely to engage the services of a petition preparer is the debtor who is least likely to have knowledge of the significance of property exemptions. The Court doubts that those debtors are independently providing the exemption amount and citation information to petition preparers for typing in the bankruptcy schedules. A petition preparer who chooses the appropriate exemption statute and exemption amount is giving legal advice – at least implicitly. That is only one example where characterization and placement of information in documents filed in a bankruptcy court represents a legal judgment made by the individual preparing the documents. In the case of a petition preparer, it is a legal judgment prohibited under state statutes prohibiting the unauthorized practice of law in addition to the federal prohibition contained in 11 U.S.C. § 110(e)(2)(B). *See also Wieland v. Assaf (In re Briones-Coroy)*, 481 B.R. 685, 694-95 (Bankr. D. Colo. 2012). In the proper case, the difficulty of compliance with 11 U.S.C. § 110 while conducting business as a petition preparer might be viewed as a mitigating factor in the context of an inadvertent technical violation. But here Assaf was previously enjoined from engaging in the very unlawful conduct that is the subject of this matter currently before the Court. Assaf's violations are not inadvertent, they are willful.

ORDER ON ORDER TO SHOW CAUSE
Case No. 11-35964 HRT

        ii.    The "workbook" he provided to the Debtor advises about the legal consequences of claiming property as exempt and cites the exemption statute applicable to each category of property.

    b.    The evidence established that Assaf engaged in fraudulent, unfair and deceptive conduct.

        i.    Assaf charged the Debtor $100.00 for the pre-petition credit counseling course and he charged her another $100.00 for the post-petition debtor education course. The evidence was that the Debtor never actually took either course but personnel in Assaf's office signed onto a web site and completed the course under the Debtor's name to acquire the certificates for each. Thus, he committed a fraud upon the Court by misrepresenting that it was the Debtor who had taken the courses; and that conduct was unfair and deceptive as to the Debtor because the actual cost of the credit counseling course from Abacus was $25.00 and the actual cost of the debtor education course from Sage Personal Finance was $35.00.

        ii.    Not only did Assaf deceive the Court and the Debtor in this case, the UST's evidence was that he followed the same practice in the majority of the 352 cases where Assaf is identified as the bankruptcy petition preparer in cases filed in the District of Colorado between March 26, 2010 and November 3, 2011 (the date of Debtor's bankruptcy filing).

        iii.    In this case, Assaf filed a fraudulent Disclosure of Compensation of Bankruptcy Petition Preparer. He disclosed compensation of $200.00 but received payment from the Debtor of $500.00.[3]

3.    Assaf has continuously engaged in conduct in violation of 11 U.S.C. § 110(e)(2) by providing legal advice to his customers and has continuously engaged in fraudulent, unfair and deceptive conduct.

    a.    The evidence was that it was standard office procedure to provide each customer with a "workbook." The court finds that the workbook provides

---

[3] Assaf's compartmentalization of the charges – $200.00 for typing; $100.00 for the workbook; $100.00 for the credit counseling; and $100.00 for the debtor education course – does not mitigate the misrepresentation. Charging for the credit counseling and debtor education courses was fraudulent in and of itself. Assaf is not approved by the UST to offer such courses and he procured the certificates to evidence course completion through fraudulent impersonation of the Debtor. Moreover, in the case of *In re Espinoza*, Case No. 2:07-bk-18881-BB (Bankr. C.D. Cal. 2008) (docket #27), the failure to disclose the total amount of fees which he received in that case was one of the numerous grounds upon which that court assessed fines against Assaf.

Page 11 of 20

              legal advice in violation of § 110(e)(2) and the UST showed that Assaf has prepared documents in at least 352 cases in a period of less than two years.

      b.      Assaf routinely perpetrated a fraud on the court and deceived his customers with respect to credit counseling and debtor education courses. The vast majority of cases, where Assaf prepared documents for filing in the District of Colorado, are cases where he fraudulently obtained course completion certificates under the debtors' names and charged his customers exorbitant fees for the false certificates.

4.      The Court finds that Assaf violated 11 U.S.C. §§ 110(b)(1)(A) & 110(c) in four instances by failing to affix a signature and identifier to Form B1D (Statement of Compliance With Credit Counseling Requirement); Form B22A – Means Test Form; Statement of Intent; and Certificate of Completion of Postpetition Instructional Course.

5.      The Court finds that Assaf violated 11 U.S.C. §§ 110(e)(2)(A) & (B) in 20 instances by giving prohibited legal advice in this Debtor's case. In six instances, he gave the Debtor specific advice to file a case under chapter 7; that debts are dischargeable; and to claim four separate exemptions on her Schedule C. In addition Assaf indirectly gave legal advice by characterizing property and debts on14 Forms and Schedules: the Petition; each of nine Schedules; the Statement of Financial Affairs; the B22 Means Test Form; the Statement of Intent and the application for Fee Waiver.

6.      The Court finds that Assaf violated 11 U.S.C. § 110(h)(2) by failing to disclose all fees received from the Debtor.

7.      Assaf has been enjoined by the Bankruptcy Court for the Central District of California from preparing or assisting in preparing any bankruptcy documents for filing in the Central District of California pursuant to 11 U.S.C. § 110(j)(3).

8.      In the District of Colorado, Assaf has continued to engage in substantially the same conduct which led to the injunction that was issued against him in the Central District of California.

9.      In Colorado, Assaf has been enjoined by the Colorado Supreme Court from engaging in the practice of law. He has violated that injunction in connection with his activities as a bankruptcy petition preparer.

10.     Assaf has thus clearly demonstrated that he is unwilling to change his business practices to comply with governing law. Instead, when enjoined from acting as a

      petition preparer in the Central District of California, he moved his operations to Colorado. Fines have not persuaded Assaf to change his behavior and neither has a narrowly tailored injunctive remedy

11. Since the Court held its hearing in this matter, an injunction was entered by Judge Brooks in the case of *Wieland v. Assaf (In re Briones-Coroy)*, 481 B.R. 685, 694-95 (Bankr. D. Colo. 2012). Unlike the injunction issued in the Central District of California, the injunction issued in the *Briones-Coroy* case is nationwide in scope. The UST seeks injunctive relief in this proceeding but Judge Brooks' order has rendered the question of injunctive relief in this case moot and the UST's request for injunction will be denied on that basis. Based on the evidence taken by the Court in this case, the Court is in full accord that the injunction entered in *Briones-Coroy* is not only appropriate but is a necessity.

## IV. CONCLUSION

Based on the foregoing, it is

**ORDERED** that within 30 days of the date of this Order, Assaf shall tender $37,500.00 statutory fines to the United States Trustee:

    a.    $2,000.00 statutory fine under 11 U.S.C. § 110(*l*)(1) on account of four violations of 11 U.S.C. §§ 110(b)(1)(A) and 110(c);
    b.    $10,000.00 statutory fine under 11 U.S.C. § 110(*l*)(1) on account of 20 violations of 11 U.S.C. §§ 110(e)(2)(A) & (B);
    c.    $500.00 statutory fine under 11 U.S.C. § 110(*l*)(1) on account of his violation of 11 U.S.C. §§ 110(h)(2); and
    d.    The above listed fines that total $12,500.00 are to be trebled under 11 U.S.C. § 110(*l*)(2)(D) to the total fine amount of $37,500.00 on account of Assaf's failure to disclose his identity as the preparer of Form B1D (Statement of Compliance With Credit Counseling Requirement); Form B22A – Means Test Form; Statement of Intent; and Certificate of Completion of Postpetition Instructional Course. It is further

**ORDERED** that within 30 days of the date of this Order, Assaf shall tender to the Chapter 7 Trustee, under 11 U.S.C. § 110(h)(3)(B), the $500.00 fee charged to the Debtor in this case on account of Assaf's multiple violations of 11 U.S.C. §§ 110(b) & (c). It is further

ORDER ON ORDER TO SHOW CAUSE
Case No. 11-35964 HRT

**ORDERED** that within 30 days of the date of this Order, Assaf shall tender to the Debtor, Carmen Avitia, $2,000.00 in statutory damages under 11 U.S.C. § 110(i)(1) on account of the Court's findings that he has engaged in fraudulent, unfair and deceptive practices.

Dated this __29th__ day of March, 2013.

BY THE COURT:

*Howard Tallman*

Howard R. Tallman, Chief Judge
United States Bankruptcy Court

ORDER ON ORDER TO SHOW CAUSE
Case No. 11-35964 HRT

# APPENDIX

11 U.S.C. § 110 – Penalty for persons who negligently or fraudulently prepare bankruptcy petitions

    (a) In this section–
        (1) "bankruptcy petition preparer" means a person, other than an attorney for the debtor or an employee of such attorney under the direct supervision of such attorney, who prepares for compensation a document for filing; and
        (2) "document for filing" means a petition or any other document prepared for filing by a debtor in a United States bankruptcy court or a United States district court in connection with a case under this title.

    (b)    (1) A bankruptcy petition preparer who prepares a document for filing shall sign the document and print on the document the preparer's name and address. If a bankruptcy petition preparer is not an individual, then an officer, principal, responsible person, or partner of the bankruptcy petition preparer shall be required to–
        (A) sign the document for filing; and
        (B) print on the document the name and address of that officer, principal, responsible person, or partner.
        (2)    (A) Before preparing any document for filing or accepting any fees from or on behalf of a debtor, the bankruptcy petition preparer shall provide to the debtor a written notice which shall be on an official form prescribed by the Judicial Conference of the United States in accordance with rule 9009 of the Federal Rules of Bankruptcy Procedure.
        (B) The notice under subparagraph (A)--
        (i) shall inform the debtor in simple language that a bankruptcy petition preparer is not an attorney and may not practice law or give legal advice;
        (ii) may contain a description of examples of legal advice that a bankruptcy petition preparer is not authorized to give, in addition to any advice that the preparer may not give by reason of subsection (e)(2); and
        (iii) shall–
        (I) be signed by the debtor and, under penalty of perjury, by the bankruptcy petition preparer; and
        (II) be filed with any document for filing.

ORDER ON ORDER TO SHOW CAUSE
Case No. 11-35964 HRT

    (c)    (1) A bankruptcy petition preparer who prepares a document for filing shall place on the document, after the preparer's signature, an identifying number that identifies individuals who prepared the document.
           (2)    (A) Subject to subparagraph (B), for purposes of this section, the identifying number of a bankruptcy petition preparer shall be the Social Security account number of each individual who prepared the document or assisted in its preparation.
                (B) If a bankruptcy petition preparer is not an individual, the identifying number of the bankruptcy petition preparer shall be the Social Security account number of the officer, principal, responsible person, or partner of the bankruptcy petition preparer.

(d) A bankruptcy petition preparer shall, not later than the time at which a document for filing is presented for the debtor's signature, furnish to the debtor a copy of the document.

    (e)    (1) A bankruptcy petition preparer shall not execute any document on behalf of a debtor.
           (2)    (A) A bankruptcy petition preparer may not offer a potential bankruptcy debtor any legal advice, including any legal advice described in subparagraph (B).
                (B) The legal advice referred to in subparagraph (A) includes advising the debtor–
                      (i) whether–
                          (I) to file a petition under this title; or
                          (II) commencing a case under chapter 7, 11, 12, or 13 is appropriate;
                      (ii) whether the debtor's debts will be discharged in a case under this title;
                      (iii) whether the debtor will be able to retain the debtor's home, car, or other property after commencing a case under this title;
                      (iv) concerning–
                          (I) the tax consequences of a case brought under this title; or
                          (II) the dischargeability of tax claims;
                      (v) whether the debtor may or should promise to repay debts to a creditor or enter into a reaffirmation agreement with a creditor to reaffirm a debt;
                      (vi) concerning how to characterize the nature of the debtor's interests in property or the debtor's debts; or
                      (vii) concerning bankruptcy procedures and rights.

(f) A bankruptcy petition preparer shall not use the word "legal" or any similar term in any advertisements, or advertise under any category that includes the word "legal" or any similar term.

(g) A bankruptcy petition preparer shall not collect or receive any payment from the debtor or on behalf of the debtor for the court fees in connection with filing the petition.

(h) (1) The Supreme Court may promulgate rules under section 2075 of title 28, or the Judicial Conference of the United States may prescribe guidelines, for setting a maximum allowable fee chargeable by a bankruptcy petition preparer. A bankruptcy petition preparer shall notify the debtor of any such maximum amount before preparing any document for filing for the debtor or accepting any fee from or on behalf of the debtor.
(2) A declaration under penalty of perjury by the bankruptcy petition preparer shall be filed together with the petition, disclosing any fee received from or on behalf of the debtor within 12 months immediately prior to the filing of the case, and any unpaid fee charged to the debtor. If rules or guidelines setting a maximum fee for services have been promulgated or prescribed under paragraph (1), the declaration under this paragraph shall include a certification that the bankruptcy petition preparer complied with the notification requirement under paragraph (1).
(3) (A) The court shall disallow and order the immediate turnover to the bankruptcy trustee any fee referred to in paragraph (2)--
(i) found to be in excess of the value of any services rendered by the bankruptcy petition preparer during the 12-month period immediately preceding the date of the filing of the petition; or
(ii) found to be in violation of any rule or guideline promulgated or prescribed under paragraph (1).
(B) All fees charged by a bankruptcy petition preparer may be forfeited in any case in which the bankruptcy petition preparer fails to comply with this subsection or subsection (b), (c), (d), (e), (f), or (g).
(C) An individual may exempt any funds recovered under this paragraph under section 522(b).
(4) The debtor, the trustee, a creditor, the United States trustee (or the bankruptcy administrator, if any) or the court, on the initiative of the court, may file a motion for an order under paragraph (3).

    (5) A bankruptcy petition preparer shall be fined not more than $500 for each failure to comply with a court order to turn over funds within 30 days of service of such order.

(i) (1) If a bankruptcy petition preparer violates this section or commits any act that the court finds to be fraudulent, unfair, or deceptive, on the motion of the debtor, trustee, United States trustee (or the bankruptcy administrator, if any), and after notice and a hearing, the court shall order the bankruptcy petition preparer to pay to the debtor–
  (A) the debtor's actual damages;
  (B) the greater of–
   (i) $2,000; or
   (ii) twice the amount paid by the debtor to the bankruptcy petition preparer for the preparer's services; and
  (C) reasonable attorneys' fees and costs in moving for damages under this subsection.
(2) If the trustee or creditor moves for damages on behalf of the debtor under this subsection, the bankruptcy petition preparer shall be ordered to pay the movant the additional amount of $1,000 plus reasonable attorneys' fees and costs incurred.

(j) (1) A debtor for whom a bankruptcy petition preparer has prepared a document for filing, the trustee, a creditor, or the United States trustee in the district in which the bankruptcy petition preparer resides, has conducted business, or the United States trustee in any other district in which the debtor resides may bring a civil action to enjoin a bankruptcy petition preparer from engaging in any conduct in violation of this section or from further acting as a bankruptcy petition preparer.
 (2) (A) In an action under paragraph (1), if the court finds that–
   (i) a bankruptcy petition preparer has–
    (I) engaged in conduct in violation of this section or of any provision of this title;
    (II) misrepresented the preparer's experience or education as a bankruptcy petition preparer; or
    (III) engaged in any other fraudulent, unfair, or deceptive conduct; and
   (ii) injunctive relief is appropriate to prevent the recurrence of such conduct, the court may enjoin the bankruptcy petition preparer from engaging in such conduct.
  (B) If the court finds that a bankruptcy petition preparer has continually engaged in conduct described in subclause (I), (II), or (III) of clause (i) and that an injunction prohibiting such conduct

would not be sufficient to prevent such person's interference with the proper administration of this title, has not paid a penalty imposed under this section, or failed to disgorge all fees ordered by the court the court may enjoin the person from acting as a bankruptcy petition preparer.

(3) The court, as part of its contempt power, may enjoin a bankruptcy petition preparer that has failed to comply with a previous order issued under this section. The injunction under this paragraph may be issued on the motion of the court, the trustee, or the United States trustee (or the bankruptcy administrator, if any).

(4) The court shall award to a debtor, trustee, or creditor that brings a successful action under this subsection reasonable attorneys' fees and costs of the action, to be paid by the bankruptcy petition preparer.

(k) Nothing in this section shall be construed to permit activities that are otherwise prohibited by law, including rules and laws that prohibit the unauthorized practice of law.

(1) A bankruptcy petition preparer who fails to comply with any provision of subsection (b), (c), (d), (e), (f), (g), or (h) may be fined not more than $500 for each such failure.

(2) The court shall triple the amount of a fine assessed under paragraph (1) in any case in which the court finds that a bankruptcy petition preparer–

(A) advised the debtor to exclude assets or income that should have been included on applicable schedules;

(B) advised the debtor to use a false Social Security account number;

(C) failed to inform the debtor that the debtor was filing for relief under this title; or

(D) prepared a document for filing in a manner that failed to disclose the identity of the bankruptcy petition preparer.

(3) A debtor, trustee, creditor, or United States trustee (or the bankruptcy administrator, if any) may file a motion for an order imposing a fine on the bankruptcy petition preparer for any violation of this section.

(4) (A) Fines imposed under this subsection in judicial districts served by United States trustees shall be paid to the United States trustees, who shall deposit an amount equal to such fines in the United States Trustee Fund.

(B) Fines imposed under this subsection in judicial districts served by bankruptcy administrators shall be deposited as offsetting receipts to the fund established under section 1931 of title 28, and shall remain available until expended to reimburse any appropriation for the amount paid out of such appropriation for

ORDER ON ORDER TO SHOW CAUSE
Case No. 11-35964 HRT

        expenses of the operation and maintenance of the courts of the United States.